```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
```

                                     :
TRUSTEES OF THE PLUMBERS AND
GASFITTERS LOCAL 5 RETIREMENT        :
SAVINGS FUND, et al.
                                     :

       v.                            :   Civil Action No. DKC 11-2610

                                     :
UTILITY MECHANICAL, INC.
                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Employee Retirement Income Security Act of 1974 ("ERISA") is a motion for default judgment filed by Plaintiffs, the trustees of the Plumbers and Gasfitters Local 5 Retirement Savings Fund, the Plumbers and Pipefitters Apprenticeship Fund, Vacation Fund, Communication and Productivity Fund, Industry Fund, and Medical Fund (collectively, "the Local 5 Funds"); the Plumbers and Pipefitters National Pension Fund and the International Trading Fund (together, "the National Pension Funds"); and Plumbers Local Union No. 5 ("the Union"). (ECF No. 15).[1] The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the

---

[1] The Local 5 Funds and the National Pension Funds are collectively referred to as "the Funds." The combined plaintiffs – *i.e.*, the Funds and the Union – are referred to as "Plaintiffs."

reasons that follow, the motion will be granted in part and denied in part.

**I.   Background**

The following facts are alleged in the complaint. The Funds are multiemployer benefit plans within the meaning of sections 3(3) and (37) of ERISA, 29 U.S.C. §§ 1002(3) and (37). The Union is an unincorporated labor organization, as that term is defined in section 2(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(5). Defendant Utley Mechanical, Inc., a District of Columbia metropolitan area plumbing contractor or subcontractor, is an employer in an industry affecting commerce, as defined in sections 501(1), (3), and 2(2) of the LMRA, 29 U.S.C. §§ 141(1), (3), and 152(2); sections 3(5), (9), (11), (12), and (14) of ERISA, 29 U.S.C. §§ 1002(5), (9), (11), (12), and (14); and section 3 of the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001a.

Pursuant to a collective bargaining agreement ("CBA"), Defendant agreed to make payments to the Funds of "certain sums of money for each hour worked by [its covered] employees." (ECF No. 1 ¶ 23). Some of Defendant's covered employees "authorized working assessment/dues deduction[s]," which the CBA required Defendant to transmit directly to the Union each month. (*Id*. at ¶ 32). The CBA further provided that, in the event of a breach, Plaintiffs were entitled, *inter alia*, "to conduct an audit of

[Defendant's] payroll and related records" to ensure proper accounting. (*Id.* at ¶ 29).

In 2010, Defendant fell behind on its scheduled contributions. On September 2, 2010, a meeting was held between representatives of the Union and Defendant to discuss settlement of delinquent amounts owed to the Funds. By a letter of settlement dated September 23 ("the settlement agreement"), the parties agreed that, as of August 31, 2010, Defendant owed the Funds $270,211.89, consisting of unpaid contributions of $196,966.30, liquidated damages of $63,743,24, and interest of $9,502.34. Plaintiffs "agreed to hold [the liquidated damages amount] in abeyance until all settlement payments and current contributions [were] received, at which time [Defendant could] request in writing that the liquidated damages amount of $63,743.24 be waived by the Funds." (ECF No. 1-1, at 1). Thus, "[t]he total amount to be paid pursuant to [the] settlement [was] $206,468.64, plus interest at the rate of 10% per annum over a period of 12 months[.]" (*Id.* at 1-2).[2] The parties' agreement specified that "[i]f any monthly payment is late (including settlement payments and future reports and contributions), this will be considered a breach . . . and the

---

[2] While not relevant here, the parties subsequently modified the agreement to set forth a schedule of payments over an eighteen-month term. (ECF No. 1-2).

3

Funds will take immediate steps to collect all amounts owed." (*Id*. at 2).

Defendant failed to make payments due under the settlement agreement for March through August 2011. Defendant additionally failed to pay amounts due to the Funds pursuant to the CBA for work performed by covered employees from January to September 2011. During the same time period, Defendant "failed to forward working assessments to [the Union] . . . on behalf of [its] employees[,] as required [under the CBA]." (*Id*. at ¶ 32).

Plaintiffs commenced this action on September 13, 2011, alleging breach of the settlement agreement and the CBA. Their complaint sought a judgment holding Defendant "liable for unpaid contributions and other amounts due and owing . . . under the terms of the Letter of Settlement in the amount of $205,030.34"; for unspecified amounts "owed under the [CBA] . . . for work performed from January 2011 through the date of judgment"; for "liquidated damages and interest owed on all late and unpaid amounts from the date due through the date of payment, plus costs, and reasonable attorneys' fees"; "for contributions owed to [Plaintiffs] which became due after the filing of [the] lawsuit and up to the date of judgment, plus interest and liquidated damages"; and "[f]or all amounts owed to [the Union] for unpaid dues and work assessments." (ECF No. 1, at 9-10). Plaintiffs further requested "a [c]ourt [o]rder requiring

4

[Defendant] to submit all payroll books and records to [Plaintiffs] for an audit, at the Defendant's expense, for the period of January, 2008[,] through and including the date of judgment." (*Id.* at 10).

Defendant, whose resident agent was served on November 3, 2011, failed to answer or otherwise respond, and Plaintiffs moved for entry of default. When Defendant failed to respond to that motion, the clerk entered default on January 24, 2012. Plaintiffs filed the pending motion for default judgment on March 30. (ECF No. 15).

## II. Standard of Review

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The Fourth Circuit has a "strong policy" that "cases be decided

on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2nd Cir. 1975); *Au Bon Pain*

*Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981)). While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

**III. Analysis**

Assuming the truth of the well-pleaded allegations contained in the complaint, as the court must upon entry of default, Plaintiffs have established Defendant's liability for breach of the settlement agreement and the CBA. With respect to damages, they now seek a total award in the amount of $461,944.42, consisting of $167,170.85 to the Local 5 Funds and $46,068.14 to the National Pension Fund related to breach of the settlement agreement; $123,666.40 to the Local 5 Funds and $69,478.42 to the National Pension Fund for unpaid contributions since January 2011, plus $29,146.45 in liquidated damages and $12,367.63 in interest; $11,957.77 in unpaid working assessments and dues to the Union; $2,088.75 in attorneys' fees and costs;

and injunctive relief.  Each category of monetary damages is supported by a declaration and attached documentary evidence.

    **A.    Damages Related to Breach of the Settlement Agreement**

As noted, the complaint requests damages "for unpaid contributions and other amounts due and owing . . . under the terms of the [settlement agreement] in the amount of $205,030.34." (ECF No. 1, at 9).  Plaintiffs now seek entry of a default judgment related to the breach of the settlement agreement in the total amount of $213,238.99 – more specifically, $167,170.85 to the Local 5 Funds and $46,068.14 to the National Pension Funds.

In support of the amount sought on behalf of the Local 5 Funds, Plaintiffs submit the declaration of James E. Killeen, III, the trustee of those funds and the business manager, financial secretary, and treasurer of the Union.  (ECF No. 15-4).  Mr. Killeen asserts:

> Pursuant to the terms of the [settlement agreement], Defendant owed $206,469.64 of which $151,043.30 was owed to the Local 5 Funds.  Defendant made seven settlement payments totaling $81,933.79 of which $51,803.08 was due to the Local 5 Funds and was applied to the principal amount owed leaving a balance owed of $157,545.66. Defendant is in default in the amount of $167,170.85 which consist[s] of contributions ($92,209.87), accrued interest ($9,625.19) calculated from the date of the last settlement payment of March 15, 2011 through March 30, 2012 at 10% per annum on the principal amount owed of $92,209.87

8

>   ($144,012.95 less principal
>   payments totaling $51,803.08) for contributions.
>   Pursuant to the [settlement agreement] the
>   amount of $167,170.85 is immediately due and
>   pay[able] to the Local 5 Funds.

(ECF No. 15-4 ¶ 7).

It is not at all clear how Mr. Killeen arrived at this figure.  Pursuant to the settlement agreement, the total principal amount owed to all funds was $206,468.64.  (ECF No. 1-2, at 3).  If, as Mr. Killeen suggests, $151,043.30 of that amount was owed to the funds he represents, and $51,803.08 was paid to those funds, the baseline principal amount owed to the Local 5 Funds would be $99,240.22, not $157,545.66.  Because the calculation of the principal amount appears to be erroneous, the interest is incorrect as well.[3]

The amount sought on behalf of the National Pension Funds is supported by the declaration of Robert H. Cooke, director of contributions and pensions of the Plumbers and Pipefitters National Pension Fund.  (ECF No. 15-5).  Mr. Cooke initially asserts that the settlement agreement required "the payment of the principal amount of $206,468.64 in contributions and accrued interest owed" to all funds, and that, of that amount,

---

[3] Unfortunately, the spreadsheet attached to Mr. Killeen's declaration only confuses matters further.  (ECF No. 15-4, at 7).  That document reflects that the total amount owed to all funds was $209,348.74, rather than $206,468.64, as reflected in the settlement agreement itself, or $206,469.64, according to Mr. Killeen's declaration.

9

"$55,385.35 [was] owed to the National Pension Fund." (*Id*. at ¶ 6). In the very next paragraph, however, he presents slightly different numbers – "Defendant owed $206,469.64 of which $55,395.35 was owed to the National Pension Fund" (*id*. at ¶ 7) – and the attached spreadsheet inexplicably shows a baseline principal amount due to the National Pension Fund of $60,864.14 (ECF No. 15-5, at 6).

Plaintiffs have failed to establish the amount owed as damages for breach of the settlement agreement. Accordingly, their motion will be denied with respect to those damages, subject to renewal within fourteen days.

### B. Damages Related to Unpaid Contributions from January 2011 to February 2012

Mr. Killeen's declaration is also insufficient to support the requested judgment amount with respect to unpaid contributions, liquidated damages, and interest from January 2011 through February 2012. He initially asserts that "Defendant has failed to pay contributions to the Local 5 Funds for the months of January 2011 through February 2012 in the amount of $123,666.40 pursuant to unfunded reports submitted by Defendant." (ECF No. 15-4 ¶ 10). The declaration later suggests, however, that contributions for at least some of these months were "submitted late[.]" (*Id*. at ¶ 13). Indeed, while the attached spreadsheet appears to show unpaid contributions

totaling $123,666.40, thereby suggesting that no contributions were made, it also purports to calculate liquidated damages and interest for late-paid contributions from April through August 2011. (ECF No. 15-4, at 7). Thus, it is not at all clear what contributions, if any, remain outstanding and what amounts were paid. Due to the uncertainty regarding the contribution amounts, the court is also unable to verify the amounts sought as liquidated damages and interest. Accordingly, Plaintiffs' request for default judgment with respect to unpaid contributions, liquidated damages, and interest owed to the Local 5 Funds will be denied, subject to renewal within fourteen days.

By contrast, Mr. Cooke's declaration with respect to the National Pension Funds does support the requested judgment. Mr. Cooke asserts that "Defendant has failed to pay contributions to the National Pension Fund[s] for the months of January 2011 through February 2012 in the amount of $69,478.42 pursuant to unfunded reports submitted by Defendant[.]"  (ECF No. 15-5 ¶ 8). According to the CBA, "an employer who fails to pay the amounts required . . . on time to the National Pension Fund shall be obligated to pay liquidated damages of 10% of the amount of the delinquency contributions, together with interest at the rate of 12% per annum from the date of the delinquency through the date of payment[.]"  (*Id.* at ¶ 10). With respect to the

International Training Fund, the CBA assesses "liquidated damages of 20% of the amount of the delinquency contributions," plus 12% interest. (*Id.* at ¶ 12). The attached spreadsheet shows total unpaid contributions to the National Pension Funds of $69,478.42, total liquidated damages of $7,066.18, and interest through the date of filing totaling $4,259.25. Thus, Plaintiffs have shown entitlement to judgment in the amount of $80,803.85, representing amounts sought for unpaid contributions, liquidated damages, and interest owed to the National Pension Funds.

### C. Unpaid Union Dues and Work Assessments

The complaint establishes that Defendant "employed certain employees covered by the [CBA] who authorized working assessment/dues deduction," but "failed to forward working assessments to [the Union] for the months of January 2011 to the present on behalf of the employees as required." (ECF No. 1 ¶ 32). Mr. Killeen's declaration and attached documentation shows the amounts owed for each of the months in question, totaling $11,957.77. (ECF No. 15-5 ¶ 18). Thus, the Union is entitled to a default judgment in that amount for unpaid dues.

### D. Attorneys' Fees

Plaintiffs additionally seek an award of attorneys' fees in the amount of $1,603.75. In support of their fee request, Plaintiffs submit the declaration of their counsel, R. Richard

Hopp, an attorney with over twenty years of experience, along with a document detailing attorney and paralegal time expended on the case. (ECF No. 15-6). These documents indicate that the firm spent a total of 12.25 hours on the case on behalf of Plaintiffs, charging an hourly rate of $105.00 for paralegal time and $225.00 for Mr. Hopp's time. These hourly rates fall within the presumptively reasonable range under the guidelines set forth in Appendix B of the court's local rules, and the number of hours appears to be reasonable. Thus, Plaintiffs are entitled to recover attorneys' fees in the amount of $1,603.75.

### E. Costs

Plaintiffs seek costs totaling $485.00 for the complaint filing fee and the fee of a private process server. (ECF No. 15-6 ¶¶ 5, 6). The docket reflects that Plaintiffs paid the $350.00 filing fee and Mr. Hopp has attached an invoice from a process server in the amount of $135.00. (ECF No. 15-6, at 4); *see also Wyne v. Medo Industries, Inc.*, 329 F.Supp.2d 584, 590 (D.Md. 2004) (finding that "fees associated with private process servers are taxable costs"). Accordingly, costs will be taxed in favor of Plaintiffs in the amount of $485.00.

### F. Injunctive Relief

As noted, the CBA establishes that, in the event of a breach, Plaintiffs are entitled "to conduct an audit of [Defendant's] payroll and related records." (*Id*. at ¶ 29). The

court is authorized to grant such relief by default judgment, *see International Painters and Allied Trades Industry Pension Fund v. Libmak Co., LLC*, Civil Action No. ELH-12-1125, 2012 WL 5383313, at *10 (D.Md. Oct. 31, 2012), and Plaintiffs are entitled to conduct an accounting.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion will be granted in part and denied in part.  Plaintiffs are entitled to a default judgment in the amount of $80,803.85 for unpaid contributions, liquidated damages, and interest owed to the National Pension Funds; $11,957.77 for unpaid working assessments and dues to the Union; $1,603.75 in attorneys' fees; and costs in the amount of $485.00.  They are additionally entitled to conduct an audit of Defendant's payroll records. They have not established entitlement, however, to requested amounts related to breach of the settlement agreement or for unpaid contributions, liquidated damages, and interest owed to the Local 5 Funds.  As to these amounts, Plaintiffs may file a supplemental motion for default judgment within fourteen days. A separate order will follow.

            _____/s/_____
            DEBORAH K. CHASANOW
            United States District Judge